UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| JIMMY D. EALY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6: 08-235-DCR |
| ) | |
| V. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

*** *** *** ***

This matter is before the Court for consideration of cross-motions for summary judgment filed by Plaintiff Jimmy D. Ealy ("Ealy") and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). [Record Nos. 6 and 7] Through this action, Ealy seeks to reverse the Commissioner's decision that he is not entitled to a Period of Disability and Disability Insurance Benefits ("DIB"). However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny Ealy's motion.

**I.    Background**

Jimmy Ealy protectively filed for a Period of Disability and DIB on January 5, 2006, alleging disability beginning December 2, 2005. His claim was denied initially and upon reconsideration. After filing a written request for an administrative hearing, Ealy's non-attorney representative, Ellen Webb, and vocational expert ("VE"), Dr. James Miller, appeared before

ALJ Donald Rising on June 14, 2007, in Middlesboro, Kentucky.  In his subsequent September 3, 2007 decision, ALJ Rising found that Ealy was not disabled under §§ 216(i) and 223(d) of the Social Security Act, and, therefore, was not entitled to a Period of Disability and DIB. [Tr., pp. 12-19]  Ealy now appeals this decision.

At the time of the administrative hearing, Ealy was a 48-year-old man with an eleventh grade education and past relevant work experience as a machine operator with a manufacturing company and a leather tannery.  He alleges disability, beginning in December 2005, consisting of seizures, sleep apnea, hypertension, obesity, depression, history of stroke, coronary artery disease, and small vessel disease.  After reviewing the record and the testimony presented at the hearing, the ALJ concluded that Ealy suffered from the following severe impairments: seizure disorder, a history of a stroke, sleep apnea, hypertension, obesity, and depression. [Tr., p. 12] Notwithstanding these impairments, the ALJ found that Ealy retained the residual functional capacity ("RFC")

> . . . to perform a full range of work at all exertional levels but with the following nonexertional limitations: no heights, hazards, climbing, operating dangerous or moving machinery, driving, and no exposure to dust, smoke, fumes or temperature/humidity extremes.  He is limited to simple, repetitive type jobs in a non-public work setting.

[Tr., p. 15]  The ALJ then concluded that Ealy had not been under a disability, as defined in the Social Security Act, since December 2, 2005.

**II.    Standard of Review**

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment

of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (citing 20 C.F.R. § 404.1520(b)-(g)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, a claimant must demonstrate that she is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, a claimant must show that she suffers from a severe impairment. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's residual function capacity ("RFC") and relevant past work to determine if she can do past work. If she can, she is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of this analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education and past work experience to determine if she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of

proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec.*

*Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.   Analysis

Ealy asserts that the ALJ's decision is not supported by substantial evidence. Specifically, he argues that: (1) the ALJ improperly adopted RFC assessments from examiners who did not have Ealy's most up-to-date treatment records; (2) the ALJ's hypothetical omitted findings regarding Ealy's mental health restrictions; and (3) the ALJ omitted certain of Dr. Stephen Scher's findings from his assessment.

Ealy's first argument is leveled at the ALJ's alleged adoption of RFC assessments prepared by Stacy Justice and Dr. Carlos Hernandez. He claims that these assessments were inaccurate because the examiners did not have the opportunity to review Ealy's later treatment records, which reflected his heart catheterization. However, the basic premise of Ealy's claim is incorrect: the ALJ did not adopt Dr. Hernandez's assessment, and instead found Ealy to be more restricted in his physical activities than Dr. Hernandez had determined. The only physical limitations Dr. Hernandez placed on Ealy's work abilities were for climbing ladders, ropes, or scaffolds, and dealing with hazards like machinery and heights. [Tr., pp. 494-501] The ALJ added to these limitations by restricting temperature, airborne contaminants, and driving.

In making this assessment, the ALJ did acknowledge Ealy's heart catheterization; in his decision, he wrote that "Mr. Ealy testified he had heart stents in December 2005 and continues to smother, have shortness of breath and chest pain pretty often, but he is not on nitroglycerin."

[Tr., p. 16] The ALJ then accommodated this condition by recommending restrictions based on airborne contaminants and temperature extremes.

In addition, the Commissioner points out that Ealy's medical records after the heart catheterization do not necessarily contradict Dr. Hernandez's assessment. Dr. Barry Michelson examined Ealy after the catheterization and made the following observations: "The patient's left ventricular function is normal by catheterization. I do not feel that this is the etiology of his shortness of breath. . . . I did discuss with him the importance of weight reduction. I believe that this and regular exercise may help his dyspnea as well." [Tr., pp. 525-526] The discharge instructions regarding his catheterization placed physical limitations only for the few days after the operation. [Tr., p. 514] Tellingly, the discharge instructions recommended that Ealy even return to work within a week after the catheterization was performed. [Tr., p. 444] These records hurt, rather than help, Ealy's argument by giving credence to an assessment that would place less physical restrictions on Ealy's activities. Therefore, Ealy's claim that the ALJ only adopted Dr. Hernandez's physical RFC assessment is without merit. There is substantial evidence in the record to show that the ALJ did take into account the condition of Ealy's health after his heart catheterization and did not actually adopt Dr. Hernandez's opinion.

Second, Ealy argues that the ALJ's hypotheticals did not address the mental health restrictions assessed by Drs. Stephen Scher and Jeanne Bennett. Where a hypothetical question fails to describe accurately the claimant's physical and mental impairments, the defect can be fatal to the VE's testimony and the ALJ's reliance on it. In *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235 (6th Cir. 2002), the Sixth Circuit reversed the Commissioner's denial of benefits

because a faulty hypothetical question did not accurately describe the claimant's abilities. As the Court noted, hypothetical questions posed to VEs for the purpose of determining whether a claimant can perform other work should be a complete and accurate assessment of the claimant's physical and mental state which should include an "accurate portrayal of her individual physical and mental impairments." *Id.* at 239; *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987); *Myers v. Weinberg*, 514 F.2d 293, 294 (6th Cir. 1975). An ALJ, however, is not required to restate verbatim a medical report to a VE in order to accurately state a claimant's relevant impairments. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Hypothetical questions need only incorporate those limitations which the ALJ has accepted as credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230,1 235 (6th Cir. 1993).

Here, the ALJ determined that Dr. Bennett's findings were not credible. Dr. Bennett found that Ealy would have a marked limitation in tolerating stress and pressure from day-to-day employment. [Tr., p. 318] Only a small portion of her interview with Ealy addressed stress: "When asked about stressors, he replied that he was stressed by his illness. He has also been experiencing grief and loss, even though his son has been deceased for five years. He has coped with stress by taking walks and watching the birds." [Tr., p. 318] The Court agrees with the Commissioner that this evidence alone is not enough to support Dr. Bennett's conclusion that Ealy would be unable to undertake day-to-day employment.

Dr. Bennett next determined that Ealy was not able to respond appropriately to supervisors or coworkers in a work setting, and the ALJ found this determination lacking in supporting evidence. [Tr., p. 319] The relevant portions of her interview noted that Ealy

maintained limited eye contact, but was cooperative in answering questions. She further noted that he sees relatives and neighbors twice a week socially and has been married to his current wife for the past twenty-six years. [Tr., pp. 315-317] And finally, she observed that he "displayed fair judgment . . . demonstrated moderate capacity for insight . . . and appear[ed] capable of making decisions for himself independently." [Tr., p. 318] These findings certainly do not appear to support Dr. Bennett's conclusion that Ealy was unable to respond to supervisors or co-workers in a work setting. The ALJ properly discounted her assessment in formulating his hypotheticals.

Dr. Scher's assessment is less limiting than that of Dr. Bennett. In fact, the ALJ adopted Dr. Scher's assessment in formulating his hypothetical, thus depriving Ealy's argument of any factual merit. In his hypothetical, the ALJ asked the VE to assume a person "limited to simple, repetitive tasks and instructions in non-public work settings." [Tr., p. 63] This formulation nearly echoes the conclusions found in Dr. Scher's mental RFC assessment. Dr. Scher stated that Ealy was able to "understand and remember simple instructions, sustain attention to complete simple repetitive tasks for two hour segments over 8 hour day where speed is not critical, tolerate coworkers and supervisors in non-public setting, and adapt to routine changes in simple work setting." [Tr., p. 322]

Ealy's final argument also concerns the findings of Dr. Scher. Specifically, Ealy argues that the ALJ failed to include the information from the "Summary Conclusions" portion of Dr. Scher's mental RFC assessment. [Tr., p. 320] This argument is a misguided interpretation of the RFC assessment form. The "Summary Conclusions" portion of the form lists twenty

different questions relating to understanding, memory, concentration, persistence, social interaction, and adaptation. [Tr., pp. 320-321] Each question is followed by check boxes for the answers of "not significantly limited," "moderately limited," "markedly limited," "no evidence of limitation in this category," and "not ratable on available evidence." Dr. Scher answered twelve of the twenty questions by checking "not significantly limited." Of the eight remaining questions, he checked "moderately limited." Following these twenty questions, or "Summary Conclusions," the form requires the medical consultant to explain those summary conclusions in a portion entitled "Functional Capacity Assessment." [Tr., p. 322]

Ealy argues that the ALJ omitted from his analysis the information from the eight questions for which Dr. Scher found that he was "moderately limited." However, as the RFC form itself mandates, these eight questions are elaborated upon later on in the assessment, in the "Functional Capacity Assessment" portion. In that portion of the RFC form, Dr. Scher, as the Court noted above, wrote: "[Ealy] retains mental ability to understand and remember simple instructions, sustain attention to complete simple repetitive tasks for two hour segments over 8 hour day where speed is not critical, tolerate coworkers and supervisors in non-public setting, and adapt to routine changes in simple work setting." [Tr., p. 322] This information was clearly included, at least in part, within the last line of the ALJ's RFC determination: "He is limited to simple, repetitive type jobs in a non-public work setting." [Tr., p. 15] Although not verbatim, the ALJ certainly incorporated Dr. Scher's assessment into his decision.

Notwithstanding Ealy's arguments, there is substantial evidence in the record to support the ALJ's decision to deny Ealy a period of disability and DIB. On an August 18, 2006 visit,

Dr. Gregory Wheatley, a treating physician for his seizure disorder, found that Ealy was doing well under his seizure medication and had not developed any further symptoms after an initial period of recovery. [Tr., 545] Dr. Wheatley determined that he was tolerating the medication well and that he was stable from a neurological standpoint. Dr. Roseanne Barker examined Ealy most recently on March 26, 2005, for sleep apnea. She diagnosed him with obstructive sleep apnea and Ealy is now being treated through CPAP therapy. [Tr., p. 310] Another treating physician, Rhonda Sivley, examined Ealy in July 2006, after his heart catheterization. She recommended that no changes should be made in his current medications and that Ealy regularly exercise and reduce his weight. [Tr., pp. 472-473] Each physician's emphasis on the need for Ealy to increase, rather than decrease, his physical activity, is at odds with a determination that Ealy is disabled. Ealy leads a functional day-to-day lifestyle, in which he watches television, walks to relatives' homes to visit, fixes his own meals, and does various household chores. [Tr., p. 113]

**IV.    Conclusion**

After a review of the record, the Court agrees that the ALJ took into consideration evidence of Ealy's heart catheterization, and that the ALJ appropriately rejected unsubstantiated physician opinions. Clearly, the ALJ took into account all credible information and issued a decision supported by substantial evidence. Accordingly, it is hereby

**ORDERED** as follows:

1.      Plaintiff Jimmy Ealy's Motion for Summary Judgment [Record No. 6] is **DENIED**;

  2. Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 7] is **GRANTED**; and

  3. The administrative decision will be **AFFIRMED** by separate judgment entered this date.

  This 6th day of February, 2009.

Signed By:
*Danny C. Reeves* DCR
United States District Judge